## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.S.-1, J.S., and G.S.**

**No. 18-0600** (Preston County 17-JA-33, 17-JA-34, and 17-JA-35)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father B.S.-2., by counsel Justin Gregory, appeals the Circuit Court of Preston County's June 1, 2018, order adjudicating him as an abusing parent in regard to the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), DeAndra Burton, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 2, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner exposed the children to emotional, psychological, and physical abuse due to his physical abuse of J.S. The DHHR also alleged that petitioner had a history of Child Protective Services ("CPS") involvement and that the mother abandoned the children. In January of 2017, the DHHR received a referral that J.S. "appeared at school with a large bruise about the size of a quarter, but oblong on her left cheek that is pretty dark and fresh, along with a bruise on her chest about 5 ½ inches long." J.S. disclosed that it was a rug burn as a result of petitioner throwing her on the floor after striking G.S. for playing in the bathroom sink. In April of 2017, another referral was made that reported that J.S. appeared at school with "two black eyes, scratches on her face, and multiple bruises in what appeared to be different stages of healing on the front and back of her lower legs." On April 28, 2017, a DHHR worker interviewed J.S. and school personnel. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as B.S.-1 and B.S.-2, respectively, throughout this memorandum decision.

worker observed a knot on the right side of the child's head along her hairline. The child disclosed that petitioner kicked her in the side of the head that morning for opening a bag of dog food. Further, the DHHR alleged that J.S. and B.S. both had truancy issues during the 2016-2017 school year, that the mother's whereabouts were unknown, and that her last contact with the children was reportedly four years prior. An amended petition was filed alleging that petitioner had substance abuse issues and a drug-related criminal history. An additional amended petition was filed in July of 2017 alleging that petitioner refused to submit to a random drug screen as ordered by the circuit court on at least one occasion, and tested positive for opiates, benzodiazepines, and marijuana in June of 2017.[2] Petitioner waived the preliminary hearing.

The circuit court held an adjudicatory hearing over several months in 2017 and 2018. The DHHR presented the testimony of two teachers and the principal from the children's school. The school personnel testified that both B.S. and J.S. often came to school with bruises, and that J.S. frequently had black eyes and various bumps. According to the teachers and principal, J.S. disclosed that petitioner physically abused her on several occasions. J.S.'s kindergarten teacher testified that she considered the child's bruising to be excessive. The principal testified that she took photographs of J.S.'s bruising and addressed the children's truancy issues. The DHHR also presented evidence that petitioner tested positive for illegal substances three times between May and September of 2017. Next, petitioner's former live-in girlfriend testified that she lived with petitioner for approximately three years and never witnessed petitioner hit, kick, or injure his children in any way. She testified that J.S.'s bruising was the result of playing with neighborhood kids. A nurse practitioner from Preston County Urgent Care testified that she examined the children following the alleged abuse by petitioner, but did not see signs of physical abuse. However, in regard to her testimony, the circuit court found that she did not speak to the children about the abuse, nor was she specifically trained to notice abuse. Petitioner testified that any bruises on his children were likely caused by "rough playing." The circuit court noted that it gave "great credibility" to the testimony of the school personnel. The circuit court found that the children had excessive bruising and that B.S. and J.S. had twenty-five and twenty-two unexcused absences from school, respectively. The circuit court adjudicated petitioner as an abusing parent in its June 1, 2018, adjudicatory order. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

___

[2]The amended petitions also included allegations that a court in Tennessee previously found by clear and convincing evidence that petitioner sexually abused his four-year-old stepdaughter, a child not at issue in this appeal. The Tennessee court also found by clear and convincing evidence that petitioner abused his biological son, S.C., who is not at issue in this appeal. Additionally, the DHHR alleged that petitioner voluntarily relinquished his parental rights to two other children in Taylor County, West Virginia, in 2015. Those two children have since reached the age of majority.

2

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. In support, petitioner argues that "[n]early all of the evidence presented by the [DHHR] in its case in chief was unreliable hearsay." Petitioner asserts that his witnesses provided reliable evidence. Although petitioner argues that the DHHR's witnesses' testimony and the DHHR's exhibits constituted hearsay, petitioner makes no reference to any objections to the same.[3] Further, in regard to the DHHR's evidence, we have held that

[t]he West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va.R.Evid. 103(a)(1).

*Tiffany Marie S.*, 196 W.Va. at 234, 470 S.E.2d at 188. Therefore, because petitioner failed to object to the DHHR's evidence, petitioner waived the hearsay issue on appeal.

Moreover, based upon our review of the record, we find that the circuit court had sufficient evidence to adjudicate petitioner as an abusing parent. We have held that

"W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode

---

[3]Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented in the lower tribunal. Petitioner makes no reference to the record on appeal wherein he objected to the testimony of the adverse witnesses or the DHHR's exhibits.

of testimony or evidence by which the [DHHR] is obligated to meet this burden."
Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

West Virginia Code § 49-1-201 provides the definitions of "abused child" and "abusing parent." An "abused child" is a child "whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, an "'[a]busing parent' means a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Id. Here, sufficient evidence of petitioner's abuse of the children existed to adjudicate him as an abusing parent. The record shows that J.S. often came to school with excessive bruising, black eyes, and various bumps. The child disclosed to teachers and other school personnel that on one particular occasion, petitioner kicked her in the head for opening a bag of dog food. Her disclosure was corroborated by B.S.-1's disclosure. The record also shows that B.S.-1 and J.S. had excessive absences from school during the 2016-2017 school year. Further, the circuit court found the school personnel's testimony to be credible and compelling.

We have often noted that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court specifically stated in its adjudicatory order that it gave "great credibility" to the testimony of the school personnel. While petitioner argues that his witnesses' testimony was reliable, the circuit court clearly found the DHHR's witnesses' testimony more credible and persuasive. In addition to the testimony from the school employees, the DHHR presented evidence that petitioner tested positive for illegal substances in May, June, and September of 2017. Based upon this evidence, we find that the circuit court properly adjudicated petitioner as an abusing parent. Accordingly, petitioner is entitled to no relief.

Because the abuse and neglect proceedings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review

4

conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 1, 2018, adjudicatory order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment