**STATE OF WEST VIRGINIA**

*In re* **G.F.**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 18-0581** (Monongalia County 18-JA-4)

# MEMORANDUM DECISION

Petitioner Mother J.F., by counsel Stephanie Nethken, appeals the Circuit Court of Monongalia County's June 7, 2018, order adjudicating her as an abusing parent of the child G.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), P. Todd Phillips, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed a child abuse and neglect petition against the parents due to the father's alcohol abuse and issues with domestic violence. The father stipulated to the allegations against him in February of 2018 and was adjudicated as an abusing parent. The circuit court adjudicated petitioner as a battered spouse and left the child in her legal and physical custody. In April of 2018, the circuit court held a dispositional hearing wherein the father was granted a post-adjudicatory improvement period and was ordered not to be around the child unsupervised. Petitioner was dismissed from the case.

Later in April of 2018, the DHHR filed an amended petition alleging that it received a referral that petitioner allowed the father in the home with the child and that petitioner had struck the child with a belt, causing a welt. Both school officials and a Child Protective Services ("CPS) worker interviewed the child, who reported that she heard her parents fighting in the home that morning. The child stated that she went to her room during the argument and waited there for petitioner. The child reported that she told petitioner that she did not want to go to school and that, in response, petitioner hit her with a belt when she did not get out of bed. The child stated

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

that petitioner threatened to punch her. The DHHR alleged that petitioner admitted that she struck the child with a small belt when she refused to go to school, blamed the child for her open CPS case, and accused the child of lying.

The circuit court held an adjudicatory hearing in May of 2018. The DHHR presented the testimony of a single witness, a CPS worker, who testified that she interviewed the child following the incident leading to the filing of the amended petition. The CPS worker stated that the child reported being struck by a belt after refusing to go to school and the worker observed a two-to-three-inch mark on the child's hip. According to the CPS worker, petitioner was hostile during her interview, screamed and called her names, and blamed the child for the situation. Further, the worker testified that petitioner knew the father was not allowed in the child's presence.

Petitioner presented the testimony of a former service provider, who stated that petitioner called her, upset and angry, following the child's removal from her home.[2] The service provider testified that petitioner was resistant to services at first, but successfully completed the program and the case was closed. The service provider stated that petitioner and the child had a good relationship and "it was just really, really good, positive interaction between [petitioner] and daughter." However, the provider admitted that she promotes non-violent discipline and agreed that striking a child with a belt was violent discipline.

Petitioner also presented the testimony of the child's therapist, who testified that the child was diagnosed with attention deficit hyperactivity disorder ("ADHD"), a generalized anxiety disorder, and persistent depressive disorder. The therapist testified that petitioner and the child shared a strong bond and that the child was protective of petitioner and worried about her due to the domestic violence the child witnessed. A case manager testified that petitioner sought assistance due to the child acting out. The case manager reported that the child exhibited "risky" behavior such as running out of the house, forcing her dogs to fight, being defiant and physically aggressive, and refusing to go to school.

Petitioner testified that, on the morning of the incident in question, the child refused to go to school. The father arrived at the home before petitioner was able to take the child to school, and petitioner screamed at the father to leave the home because she "was afraid that either he or I would be arrested because [the child] was still there." According to petitioner, the father left the home and she resumed her attempts to get the child ready for school. However, the child remained in bed and petitioner admitted that she smacked the child with "the clothes, the belt, everything, and told her to get up, through the blanket, not any other way." Petitioner also testified that her child had behavioral issues and lied at times.

Petitioner's sister, who had placement of the child at the time of the hearing, corroborated petitioner's testimony and testified that the child exhibited behaviors such as lying and acting out while in her care.

---

[2]Petitioner was provided services following the filing of the initial petition to address the child's truancy.

After hearing testimony, the circuit court found

> that the domestic violence in the home, alcohol substance abuse by [the father], psychological abuse of the child, angry behaviors by [petitioner] that led to her hitting the minor child with a belt, and [the father's] violation of this [c]ourt's previous order not to be in the presence of the child without supervision clearly supports that the minor child was abused and/or neglected by the [parents'] behaviors.

Accordingly, the circuit court adjudicated petitioner as an abusing parent and noted that petitioner's angry demeanor during her testimony was the "major reason" for its decision. It is from the June 7, 2018, adjudicatory order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. Specifically, petitioner avers that there was insufficient evidence upon which to adjudicate her because the DHHR presented the testimony of only one witness, whose testimony showed that the child changed her story, rendering the allegations incredible.[4] Petitioner states

---

[3]Petitioner appeals the adjudicatory order adjudicating her as an abusing parent. As such, the matter has not reached disposition and remains ongoing. Both parents' parental rights remain intact. According to the guardian, the child has been returned to petitioner's physical custody and both parents are currently participating in an improvement period. The permanency plan is reunification with the parents and the concurrent permanency plan is legal guardianship.

[4]Petitioner relies on the CPS worker's testimony at the preliminary hearing that "[the child's] story changed a little bit when I spoke to her" to support her argument that the allegations against her were incredible due to the child's inconsistent statements. However, the

3

that she did not knowingly or intentionally inflict physical injury upon the child, but rather was attempting to get her child to obey by smacking a belt wrapped in the child's clothes on the bed. Further, she states that the father would not have been in the child's presence had the child gone to school on time, a fact the CPS worker conceded during her testimony. Based on these facts, petitioner argues that the DHHR did not meet its burden of proof and the circuit court erroneously adjudicated her largely on her demeanor during the hearing. We disagree.

We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W.Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Finally, pursuant to West Virginia Code § 49-1-201,

> "[a]bused child" means: (1) [a] child whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home. Physical injury may include an injury to the child as a result of excessive corporal punishment[.]

Here, the CPS worker presented testimony that petitioner allowed the father in the child's presence against court order and struck the child out of anger, causing a welt. The circuit court found that this evidence, when viewed in context of the parents' long history of domestic violence in the presence of the child and petitioner's angry demeanor towards others during the adjudicatory hearing, was sufficient to establish that the child was abused and/or neglected by petitioner pursuant to West Virginia Code § 49-1-201. Petitioner essentially asks this Court to find that the circuit court erroneously relied on the testimony of the CPS worker regarding the

---

record demonstrates that this inconsistency dealt with whether there was physical violence between petitioner and the father on the morning of the incident. The CPS worker's testimony regarding the child's reports of petitioner smacking her with a belt did not change from the adjudicatory to the dispositional hearing. Accordingly, as discussed more fully below, the record demonstrates that sufficient evidence existed to determine the child's statements were credible and consistent with regard to her reports of being smacked with a belt.

child's allegedly inconsistent statements rather than her own favorable testimony. We have previously held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of facts." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)). Further, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). While petitioner argues that the testimony of the CPS worker was insufficient to adjudicate her as an abusing parent, we note that the circuit court was in the proper position to hear the testimony of all of the witnesses, including petitioner, and assign the proper weight. Further, the circuit court was able to hear testimony of any alleged inconsistencies with the child's statements and assign credibility in that regard. Accordingly, we decline to disrupt the circuit court's decision and find that there was sufficient evidence upon which to adjudicate petitioner as an abusing parent. Thus, petitioner is entitled to no relief.

Lastly, because the proceedings in circuit court are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 7, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment