# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.J.**

**No. 18-0741** (Roane County 17-JA-123)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.J., by counsel Marc A. Moore, appeals the Circuit Court of Roane County's July 23, 2018, order terminating his parental rights to D.J.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Michael W. Asbury, Jr., filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding by clear and convincing evidence that he abused and neglected the child, denying his motion for a post-adjudicatory improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2017, the DHHR filed a petition alleging petitioner was incarcerated in March of 2017 due to felony charges in Putnam County, West Virginia. The DHHR also alleged that the child's parents and custodians failed to provide the child with necessary food, clothing, shelter, and supervision. According to the DHHR, petitioner was not involved in the child's life and the child's mother's contact with the child was described as "sporadic" over the previous eighteen months. The mother was allegedly addicted to illegal substances. At the time the petition was filed, the child lived with the maternal grandparents. However, according to the DHHR, the grandparents abused illegal substances and the home was in a deplorable condition

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

rendering it unsuitable for the child. The DHHR further alleged that the child suffered emotional trauma and medical neglect while residing in the grandparents' home.

On April 23, 2018, the circuit court held an adjudicatory hearing. The DHHR called petitioner as a witness and he testified that he was incarcerated at Salem Correctional Center after being charged with the possession of a stolen vehicle. He also testified that he was charged with another crime in Kanawha County, West Virginia, and that he would be incarcerated until at least March of 2019. He stated that prior to March of 2017, he saw the child "[a]t least a week out of the month" fairly consistently. He then testified that he last saw the child in March of 2017, just before the child turned two years old. According to petitioner, the mother and the child stayed with him for two weeks in the trailer he was renting in March of 2017. Petitioner explained that, prior to March of 2017, he would occasionally visit the child at the maternal grandparents' home. However, he did not stay long because he and the mother would argue. He stated that he was aware of the mother's substance abuse problem, but believed that the child was being taken care of by the maternal grandparents. He further explained that he did not see the child after March of 2017 because he and the mother argued frequently. He also did not see the child because he was incarcerated. He stated that he did not seek custody of the child prior to his incarceration because he did not have a home or a job and could not afford an attorney. Lastly, he testified that he was not paying any child support. Following the presentation of evidence and arguments from the parties, the circuit court adjudicated petitioner and found that he failed to provide any support to the child, demonstrated a settled purpose to forego his parental duties to the child, and abandoned the child.

On July 16, 2018, petitioner appeared at the dispositional hearing by telephone. He testified that his possible release date from incarceration was in May of 2019. He moved for a post-adjudicatory improvement period and stated that incarceration was the "only obstacle" to his participation. He also stated that, prior to March of 2017, he saw the child "[a]t least two weeks out of a month." Following petitioner's testimony, the DHHR argued petitioner contradicted himself during his testimony, that there was not a bond between petitioner and the child, and to take the three-year-old child to a correctional facility for visitation in order to facilitate a bond would be inappropriate. The guardian argued in opposition to any order granting petitioner an improvement period based upon the fact that petitioner went long periods of time without seeing the child, even when he was not incarcerated. The guardian moved the circuit court to terminate petitioner's parental rights. Based upon the evidence presented, the circuit court denied petitioner's motion for a post-adjudicatory improvement period finding that, because of his unavailability caused by his incarceration, petitioner was unable to "participate in a post[-]adjudicatory period of improvement to substantially correct the conditions of abuse and neglect that caused the [p]etition to be filed." The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its July 23, 2018, dispositional order.[2] It is from this order that petitioner appeals.

---

[2]The mother's parental rights were also terminated. According to respondents, the permanency plan for the child is adoption into her current foster placement.

The Court has previously established the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in finding by clear and convincing evidence that he abused and neglected the child.[3] In support, he asserts that he visited with the child monthly prior to his incarceration. He contends that his incarceration was the only reason that he was adjudicated as an abusing parent. We disagree.

Based upon our review of the record, we find that the circuit court had sufficient evidence to adjudicate petitioner as an abusing parent. We have held that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id*. at 546, 759 S.E.2d

---

[3]Also in support of this assignment of error, petitioner appears to suggest that the maternal grandparents prevented him from seeing the child. He also asserts that there was a paternal grandparent available for placement of the child and was willing to facilitate visitation between petitioner and the child. These assertions are not supported by the record and will not be considered on appeal.

at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

West Virginia Code § 49-1-201 defines "neglected child" as a child whose

> physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent.

Here, sufficient evidence was presented to show that petitioner neglected the child. The record shows that even before he was incarcerated, petitioner did not have a relationship with the child and never provided any financial or other support to the child. Additionally, the record shows that petitioner was aware of the mother's substance abuse problem, but failed to take any action to protect the child from her. Based on this evidence, it is clear that petitioner neglected the child prior to his incarceration. The evidence is also clear that petitioner did not see the child after March of 2017 when he was incarcerated. Petitioner admitted this was the case, but also provided conflicting testimony regarding how often he visited the child prior to his incarceration. He failed to provide any other evidence to prove how frequently he saw the child prior to March 2017. The circuit court clearly did not find petitioner's testimony regarding his visits with the child to be credible. With regard to witness credibility, we have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Moreover, based on the evidence of petitioner's absence from the child's life, the circuit court found that petitioner demonstrated a settled purpose to forego his parental duties to the child, which constitutes abandonment. *See* W. Va. Code § 49-4-201. Based upon this evidence, we find that the circuit court properly adjudicated petitioner as an abusing parent. Accordingly, petitioner is entitled to no relief.

Next, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. We disagree. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period if the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Petitioner admitted that his incarceration prevented him from participating in an improvement period. However, the record shows that petitioner demonstrated a settled purpose to forego his parental duties based upon evidence beyond his incarceration. Due to his abandonment of the child and the circuit court's discretion in granting improvement periods, the circuit court did not err in denying petitioner a post-adjudicatory improvement period.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights. In support, petitioner contends that the circuit court based the termination of his parental rights solely on his incarceration and failed to consider the following requirements:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 3. However, the circuit court was not required to consider these factors due to the fact that petitioner's incarceration was not the only consideration in its decision to terminate petitioner's parental rights. As discussed above, petitioner failed to provide financial or other support to the child and ultimately abandoned the child. Therefore, his argument that the termination of his parental rights was based solely on his incarceration is without merit.[4]

We find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(4) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] abandoned the child." Additionally, West Virginia Code § 49-4-604(b)(7)(A) provides that, for purposes of the circuit court's consideration of the disposition custody of a child, the DHHR is not required to make reasonable efforts to preserve the family when aggravated circumstances such as abandonment exist.

Here, it is clear from the record that petitioner failed to provide any financial or other support to the child even before he was incarcerated. During the proceedings, petitioner provided contradictory testimony regarding how often he visited the child prior to March of 2017 and did not offer any evidence to corroborate his testimony regarding the frequency of his visits with the child. However, the record clearly shows that petitioner did not see the child after March of 2017. The record also shows that there was no bond between petitioner and the child. Due to his abandonment of the child, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the

---

[4]Also in support of this argument, petitioner "request[s] to incorporate by reference arguments contained" in various reference materials included in the appendix. However, these materials cannot be considered on appeal as they were not included in the record below, as required by Rule 7(a) of the West Virginia Rules of Appellate Procedure, which provides that "[a]n appendix must contain accurate reproductions of the papers and exhibits submitted to the lower court."

termination of petitioner's parental rights was in the child's best interests. Further, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. At the time of the dispositional hearing, the child was three years old and had been in foster care for over seven months and petitioner was going to be incarcerated for at least another year. For these reasons, the termination of petitioner's parental rights was necessary in order to establish permanency for the child in an adoptive home. Based on this evidence, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 23, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison