# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.M. and J.C.**

**No. 19-0208** (Marion County 18-JA-126 and 18-JA-127)

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father G.M., by counsel Matthew S. Delligatti, appeals the Circuit Court of Marion County's January 27, 2019, order adjudicating him as an abusing parent.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The children's guardian ad litem ("guardian"), Marci R. Carroll, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 19, 2018, the DHHR filed a petition alleging that petitioner sexually abused his adopted daughter, K.M., when he got her up for school on September 7, 2018. According to the referral, the child arrived to school that day and reported that petitioner repeatedly touched her vagina through her pants, touched her breast through her clothing, and then tried several times to put his hands down the child's pants. A forensic interview was conducted during which the child identified that petitioner touched her breasts and vagina by marking those areas on an anatomical drawing. The child became upset and cried when asked to name the vaginal area. The child disclosed that she was wearing grey shorts and an orange tank top and was lying on her back in bed when petitioner came into her room and stood above the bed. The child explained that she believed petitioner thought she was asleep when he touched her. She stated that petitioner first touched her breasts, but stopped when she moved. She reported that he then touched the area

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

around her vagina. She explained that petitioner touched her over her clothes. Further, the child disclosed that petitioner attempted to reach up her shorts to touch her, but that he stopped when she moved her leg. She stated that after she moved that time, petitioner shook her arm to wake her up. The child told the interviewer that she did not initially tell her mother about the sexual abuse because she did not want her brother to hear. After learning of petitioner's sexual abuse of K.M., the mother filed a protective order against petitioner to prevent him from having any contact with the child.[2]

When a Child Protective Services worker and the police interviewed petitioner, he admitted to having a sexual relationship with his stepdaughter, the children's biological mother. However, petitioner claimed that the sexual relationship with his stepdaughter did not occur until she became an adult. Petitioner denied that he touched K.M. in a sexual way and suggested that the child made the allegations because she was angry with him for breaking her phone, which he did after finding that she had his phone number programmed under "ass." Petitioner also offered examples of K.M. lying about things and being jealous of her brother in an attempt to discredit her.

On September 27, 2018, the circuit court held a preliminary hearing during which the forensic interviewer testified regarding the child's disclosures during the interview. The interviewer further testified that the child made consistent statements about the abuse to her mother and her therapist. At the conclusion of the hearing, the circuit court found that the DHHR's removal of the children from petitioner's custody was reasonable and necessary and scheduled the adjudicatory hearing. On December 11, 2018, the circuit court held a hearing and granted the guardian's motion to admit K.M.'s forensic interview in lieu of her testimony.

On January 7, 2019, the circuit court held an adjudicatory hearing. The forensic interviewer testified that the child disclosed to school personnel that petitioner sexually abused her when waking her up for school. The interviewer further provided details of the child's disclosures, particularly that petitioner had touched the child's breasts and vaginal area, and that the child marked an anatomical drawing of those areas, which was admitted into evidence along with a recording of the child's interview. Next, K.M.'s therapist testified that the child disclosed the sexual abuse to her. The therapist opined that the behaviors that K.M. exhibited were consistent with those frequently exhibited by victims of sexual abuse, and that she had no reason to doubt the veracity of the child's disclosures. The police officer who investigated the allegations testified that he observed the child's forensic interview. He testified that nothing the child said during the interview led him to question her truthfulness and added that the child cried during the interview, particularly when disclosing that petitioner touched her vagina. The officer further testified that petitioner denied the allegations against him during his interview and agreed to take a polygraph examination at a later time. However, petitioner failed to appear for the examination, purportedly upon advice of his counsel.

Petitioner testified on his own behalf stating that nothing "sexual" happened between him and K.M. He initially denied touching the child's breasts or vaginal area, but later testified that it was possible that he touched her breasts or other parts of her body, but if he had done so, it was

---

[2]There were no allegations of abuse and neglect against the mother as she took appropriate steps to protect K.M. after learning of the abuse.

not intentional. He also suggested that the child made the allegations because he broke her phone. However, the mother testified that, although petitioner broke the child's phone, the child started using an old phone and did not seem upset about the broken phone.

On January 27, 2019, after reviewing the child's forensic interview, the circuit court issued an order adjudicating petitioner as an abusing parent based upon his sexual abuse of K.M. The circuit court found that the child's repeated disclosures of sexual abuse were credible and supported by clear and convincing evidence, including the therapist's testimony that the child's symptoms were consistent with that of a child sexual abuse victim. The circuit court further found that petitioner's testimony was not credible, "both in demeanor and content," particularly due to his conflicting versions of events. First, he firmly denied the allegations, but then admitted that it was possible that he accidentally touched the child's breasts or "somewhere else on her body," but consistently emphasized that "there was no intent." In sum, the circuit court found that petitioner "inappropriately touched the breasts and vaginal area of [the child and] . . . did so in a sexual manner and not merely incidental to waking her up for school." It is from this order that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the DHHR failed to prove by clear and convincing evidence that he abused and neglected the children and that the circuit court's findings were clearly erroneous. In support, petitioner contends that K.M.'s disclosures during her forensic interview were not credible because of a discrepancy regarding how often petitioner stayed at the family's home, because it was "not clear whether K.M. was dreaming or 'half-asleep,'" and because K.M. made allegations against petitioner "out of spite" after petitioner broke her phone. Petitioner also alleges that the circuit court failed to "properly assess" his credibility because he was "insistent that he did not intentionally grab K.M.'s breast or touch her vaginal area when he woke her up for school but he acknowledged that he possibly could have brushed or bumped her breast when

---

[3]The mother is a nonabusing parent. Because a dispositional hearing has not yet been held in the matter, petitioner's parental rights to the children are still intact.

tugging on her blanket to wake her up." Finally, in support of his argument that the circuit court erred in adjudicating him as an abusing parent, petitioner contends that no criminal charges were filed against him. We find no error in the circuit court's adjudicating petitioner as an abusing parent.

In regard to adjudication,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further,

[t]his Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996) (internal citations omitted). We have also stated that the clear and convincing standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cramer v. W. Va. Dept. of Highways,* 180 W.Va. 97, 99 n. 1, 375 S.E.2d 568, 570 n. 1 (1988).

*In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014).

Upon our review of the record, we find that K.M.'s statements were compelling and sufficiently detailed to support the circuit court's finding that she was sexually abused by petitioner. During the forensic interview, the child consistently disclosed that petitioner touched her breasts and vaginal area when he came into her room to wake her up for school on September 7, 2018. She also disclosed the sexual abuse to her mother and her therapist. We have held that "[s]exual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated." *In re K.P.*, 235 W. Va. 221, 230, 772 S.E.2d 914, 923 (2015) (citing syl. pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981)). Likewise, "the absence of witnesses to the abuse is not a basis to disbelieve [the child.] It is axiomatic that most sexual abuse of children is not committed in front of an audience." *Id.* at 232, 772 S.E.2d at 925. K.M.'s forensic interview was admitted into evidence in lieu of her testimony and her disclosures were sufficient to show that petitioner sexually abused her, because, as discussed further below, the circuit court found her statements to be credible.

To the extent that petitioner argues that the child's disclosures during her forensic interview were not credible and that the circuit court "failed to properly assess" petitioner's credibility, we note that "[i]n reviewing the entirety of the evidence, this Court must adhere to the appellate standard of review set forth above, according significant weight to the circuit court's credibility determinations while refusing to abdicate our responsibility to evaluate the evidence and determine

whether an error has been committed." *F.S.*, 233 W. Va. at 546, 759 S.E.2d at 777. Moreover, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

The circuit court found the child's disclosures to be credible and supported by clear and convincing evidence. The forensic interviewer testified that K.M. disclosed consistent details regarding the sexual abuse perpetrated by petitioner. The child's therapist opined that the behaviors that K.M. exhibited were consistent with those frequently exhibited by victims of sexual abuse, and that she had no reason to doubt the veracity of the child's disclosures. The police officer that investigated the allegations testified that he observed the child's forensic interview and that nothing the child said during the interview led him to question her truthfulness. In its adjudicatory order, the circuit court was dismissive of petitioner's attempts to discredit the child's disclosures. Notably, while petitioner claimed that K.M. made the allegations against him because she was mad at him for breaking her phone, the child's mother testified that K.M. was not upset about the phone. Further, although petitioner argues that there was a discrepancy regarding how often he stayed at the family's home, the evidence clearly showed that petitioner was in the home when the abuse occurred. Additionally, petitioner argues that the child may have been dreaming or "half-asleep" when the abuse occurred. However, the record shows that the child consistently stated that she was awake when petitioner sexually abused her and was able to give clear and concise details regarding the abuse. Moreover, in regard to petitioner's testimony, the circuit court found that his testimony was not credible due to his conflicting version of the events. First, he denied the allegations, but later admitted that there as a possibility that he may have touched K.M. "somewhere on her body" when he was waking her up for school. Based on this evidence, we find no error in the circuit court's determinations regarding the credibility of the child and petitioner.

While petitioner also argues that criminal charges were not filed against him for lack of probable cause, as discussed above, in the abuse and neglect matter at hand, the statements K.M. made during her forensic interview were sufficient to show that petitioner sexually abused her. As discussed, the circuit court found the child's statements during the forensic interview to be credible. Further, although the investigating officer did not pursue criminal charges, as mentioned above, the officer stated during his testimony that he observed K.M.'s forensic interview and did not have any reason to believe that the child was not being truthful about the abuse. Therefore, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 27, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 17, 2019

5

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison