# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.E.

No. 19-0812 (Morgan County 18-JA-17)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father P.E., by counsel Charles S. Trump IV, appeals the Circuit Court of Morgan County's August 9, 2019, order terminating his parental rights to A.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel John M. Masslon II, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Debbie Flowers Payne, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) adjudicating him as an abusing parent, (2) having ex parte communications with other counsel in the case, (3) ordering petitioner to submit to a drug screen when he was a nonabusing parent at that time and was not represented by counsel, (4) denying his motion to dismiss the petitions against him, (5) allowing the DHHR to file an amended petition after the DHHR rested its case, and (6) considering the recorded interview of the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the DHHR filed a child abuse and neglect petition against petitioner in 2013. At the conclusion of the proceedings, the circuit court

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Although petitioner lists the termination of his parental rights as an assignment of error, he completely fails to mention termination in the argument section of his brief. As such, we will not address the termination of his parental rights on appeal.

1

terminated petitioner's custodial rights to the child. In December of 2018, Deputy Tony Link of the Morgan Country Sheriff's Department filed a child abuse and neglect petition against the mother due to her severe drug abuse. Specifically, the mother was arrested and charged with driving under the influence with a minor in the car. The mother was ordered to serve sixty days of incarceration on the weekends, but was refused admittance on one occasion due to her intoxicated state, resulting in the revocation of her weekend incarceration.[3] Petitioner was listed as a nonabusing parent in the petition.

The circuit court held a preliminary hearing in the abuse and neglect case on January 3, 2019. Due to certain conflicts, petitioner's counsel withdrew from the case. Several attorneys met with the circuit court prior to the hearing to address the conflicts, but also advised the circuit court that petitioner appeared to be under the influence when they observed him in the hallway. The circuit court contacted local counsel to represent petitioner and ordered petitioner to submit to a preliminary drug screen while counsel was en route to the courthouse. Petitioner objected and stated that he did not want to give a urine sample without his counsel present. The circuit court stated that petitioner could submit to the drug screen or be taken into custody for contempt. Petitioner acquiesced and submitted a urine sample, which tested positive for opiates, benzodiazepine, cocaine, and marijuana.[4] The circuit court then placed the child in the DHHR's custody.

Upon the DHHR's motion, the circuit court added it as a co-petitioner to the proceedings. On January 9, 2019, the DHHR filed an amended petition, alleging that petitioner tested positive for benzodiazepine, opiates, marijuana, and cocaine at the January 3, 2019, hearing. The DHHR further alleged that petitioner had been involved in a traffic accident in Maryland wherein the child sustained a minor injury. According to the DHHR, petitioner had been driving on a suspended license. In February of 2019, the circuit court held the first of several adjudicatory hearings. Petitioner attempted to relinquish his parental rights, but he tested positive for opiates, morphine, benzodiazepine, cocaine, and marijuana at the hearing. As such, the circuit court did not allow petitioner to relinquish his parental rights and continued the adjudicatory hearing.

On April 5, 2019, the adjudicatory hearing resumed, and petitioner testified that he was intoxicated at the January 3, 2019, hearing. Petitioner also conceded that he used drugs prior to the initiation of the proceedings, but claimed that he did not abuse or neglect the child because she was not in his immediate care when he abused drugs. Petitioner also claimed that he "didn't really relapse" until after the January 3, 2019, hearing. Petitioner "plead the fifth" in response to numerous questions and claimed that he was the victim in this case. At the end of the hearing, petitioner moved the circuit court to dismiss the petitions against him, but the circuit court denied the motion and continued the hearing.

---

[3]It appears that, despite the termination of petitioner's custodial rights in a prior proceeding, the child was placed in his custody upon the mother's incarceration.

[4]The sample was sent to a laboratory for confirmation, but could not be tested due to the insufficient amount produced.

The next adjudicatory hearing was held on April 12, 2019. A Child Protective Services ("CPS") worker testified that the DHHR did not initially file a petition against petitioner because it had not substantiated abuse or neglect of the child. However, the DHHR later joined the initial petition filed by Deputy Link after the January 3, 2019, hearing due to emerging concerns of petitioner's drug abuse. The circuit court continued the hearing following the CPS worker's testimony. On April 22, 2019, the DHHR filed a second amended petition against petitioner. Specifically, the second amended petition purported that an interview of the child had been performed at a Child Advocacy Center ("CAC") and that the child disclosed drug use by petitioner and the mother. The child also described a situation in which petitioner attempted to kill the mother with a sword when he accused her of stealing his pills. At a hearing held on April 26, 2019, the CPS worker continued her testimony, stating that although the DHHR did not initially substantiate mental or emotional injury to the child, the case had evolved, and she opined that her assessment of the situation had changed. Following the worker's testimony, the circuit court continued the hearing to allow the parties time to review the CAC interview and recorded phone calls made between the mother and petitioner while he was in jail.[5] The circuit court admitted the child's recorded interview, as well as the recordings of those phone calls.

On May 16, 2019, petitioner filed a motion for an improvement period wherein he admitted that he had a history of controlled substance abuse and addiction and that his use of controlled substances for which he did not have a prescription negatively affected his ability to parent the child. Despite these admissions, petitioner continued to claim during subsequent hearings that he did not abuse or neglect the child. After another continued hearing, the circuit court held the final adjudicatory hearing on June 21, 2019. The forensic interviewer who performed the CAC interview with the child testified that there were elements of credibility in the child's disclosures and opined that the child's statements were not coached. Ultimately, the circuit court adjudicated petitioner as an abusing parent based on his failure to protect the child from his drug addiction. The circuit court specifically noted that it was not relying on the preliminary drug screen from the January 3, 2019, hearing as it was unable to be confirmed by a laboratory. However, the circuit court noted it was relying on its own observations that petitioner was grossly impaired at the hearing, regardless of whether the impairment was the result of excessive use of prescribed medication or nonprescribed or illicit drugs. The circuit court further noted that petitioner subsequently admitted to being under the influence at that hearing. The circuit court also relied on the child's disclosures during the CAC interview as a basis for adjudicating petitioner based upon his drug use.

The circuit court held a dispositional hearing in July of 2019. Ultimately, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that he

---

[5]Petitioner was arrested and indicted for domestic battery and the felony offense of strangulation. According to the record, around January 24, 2019, petitioner engaged in domestic violence with the mother, and her adult son from another relationship stabbed petitioner in her defense. Petitioner was transported to the hospital, where he tested positive for cannabinoids, cocaine, opiates, and benzodiazepines. However, this information was not added to either the first or second amended petitions, and petitioner was not adjudicated based upon domestic violence.

could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the August 9, 2019, dispositional order.[6]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises several assignments of error regarding his adjudication. Specifically, petitioner argues that the circuit court erred in refusing to dismiss the petitions against him when they did not contain allegations that he abused and neglected the child. Petitioner notes that he was considered a nonabusing parent in the first petition and, thus, there were no allegations against him. Petitioner claims the first amended petition was deficient because it failed to allege that he ever used drugs while the child was in his care, custody, and control. Moreover, the petition contained allegations that he was in a car accident while the child was a passenger, but does not include allegations that the traffic incident was his fault or the result of any improper or negligent driving. Petitioner likewise claims that the second amended petition was deficient because it did not add any allegations against petitioner, but merely contained excerpts from the child's CAC interview. Petitioner contends that these "allegations" are insufficient to allege abuse and neglect pursuant to West Virginia Code § 49-4-601(b) and Rule 18 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. We disagree.

West Virginia Code § 49-4-601(b), in part, provides that "[t]he petition shall allege specific conduct including time and place, how the conduct comes within the statutory definition of neglect or abuse with references to the statute, any supportive services provided by the department to remedy the alleged circumstances, and the relief sought." Similarly, Rule 18(a) sets forth that the petition shall contain "[c]itations to statutes relied upon in requesting the intervention of the court and how the alleged misconduct or incapacity comes within the statutory definition of neglect and/or abuse." Pursuant to West Virginia Code § 49-1-201, a neglected child is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the

---

[6]The mother's parental rights were also terminated below. The permanency plan for the child is adoption in her current foster placement.

child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education." Contrary to petitioner's assertions, the first and second amended petitions contained sufficient allegations of abuse and neglect perpetrated by petitioner. The first amended petition contained allegations of petitioner's intoxication at the January 3, 2019, hearing. The record is clear that, although the child was not in petitioner's immediate presence at that time, she was in his custody. The second amended petition added allegations from the child's CAC interviews wherein she disclosed that petitioner attempted to kill the mother and engaged in substance abuse. To the extent petitioner argues that the DHHR erred in failing to allege that the child's disclosures "are true," we note that the certification of the petition signed by the investigating CPS worker clearly notes that based "upon information and belief," the "facts contained in the said [p]etition are true and correct" and that "she believes them to be true." Based on the foregoing, the DHHR stated that it believed the child to be abused and/or neglected. Accordingly, we find that the petitions contained allegations that, if proven at the adjudicatory hearing, were sufficient to make a finding of abuse and neglect.

Petitioner also argues that the circuit court erred in permitting the DHHR to file the second amended petition after the adjudicatory hearing had commenced in violation of Rule 19(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that "[t]he court may allow the petition to be amended at any time until the final adjudicatory hearing begins, provided that an adverse party is granted sufficient time to respond to the amendment." Moreover, this Court has previously held that

> [u]nder Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, amendments to an abuse/neglect petition may be allowed at any time before the final adjudicatory hearing begins. When modification of an abuse/neglect petition is sought, the circuit court should grant such petition absent a showing that the adverse party will not be permitted sufficient time to respond to the amendment, consistent with the intent underlying Rule 19 to permit liberal amendment of abuse/neglect petitions.

Syl. Pt. 4, *State v. Julie G.*, 201 W. Va. 764, 500 S.E.2d 877 (1997). Petitioner avers that Rule 19 and *Julie G.* "make it clear that the commencement of the adjudicatory hearing is the chronological point after which amendments to the petition cannot be made." Petitioner concludes that the circuit court erred in permitting the filing of the second amended petition as it was filed after the DHHR rested its case during the adjudicatory hearings. We find no merit in petitioner's argument.

Petitioner correctly cites to Rule 19 and *Julie G.*, which speak to amended petitions. However, petitioner fails to acknowledge a key factor—that amendments can be made "at any time before the *final* adjudicatory hearing begins." *Julie G.*, 201 W. Va. at 765-66, 500 S.E.2d at 878-79, syl. pt. 4. Here, the DHHR filed a second amended petition on April 22, 2019. The final adjudicatory hearing was not held until June 21, 2019. As such, the second amended petition was filed before the final adjudicatory hearing began. Moreover, petitioner fails to demonstrate that he was not permitted sufficient time to respond to the allegations in the second amended petition. Indeed, the record reveals that the hearings were continued to allow petitioner time to review the CAC interview and hire an expert witness to address issues with the child's credibility if he so chose. Accordingly, we find that petitioner is entitled to no relief in this regard as it is clear that

the second amended petition was filed prior to the start of the final adjudicatory hearing, and because petitioner failed to show that he did not have sufficient time to address the allegations.

Petitioner next argues that the circuit court erred in considering the CAC interview of the child.[7] According to petitioner, there were numerous errors in considering this evidence. First, petitioner claims that the recorded interview was not sworn testimony and, as such, was not given under oath and did not comply with the West Virginia Rules of Evidence or the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Second, petitioner contends that the interview was inadmissible because the child was not subject to cross-examination. Third, petitioner claims the interview should not have been considered because the child was obviously coached. Petitioner cites to portions of the transcript in which the child asked "[w]hen are we going to get to the stuff about talking about the things that [my parents] were doing that were bad?" Petitioner also cites to portion wherein the child responded "I forget" to numerous questions about petitioner's alleged drug abuse. According to petitioner, these instances demonstrate that the child was coached. Fourth, petitioner argues that the interview should not have been considered because it was hearsay. Petitioner avers that the child's recorded interview is a classic example of hearsay because they were out-of-court statements offered by the DHHR to prove the truth of the matters asserted in the child's statements. Petitioner also contends that the statements fit no recognized exceptions to the hearsay rule. Fifth, petitioner claims the interview should not have been considered because many of the child's responses were not based upon her personal knowledge. As noted above, petitioner states that the child was unable to describe what the drugs looked like and, despite stating that petitioner acted "weird" after using drugs, could not describe what kinds of things petitioner did that were weird. Further, the child reported that she knew petitioner was doing drugs because he would lock his bedroom door. However, petitioner argues that unless the child had "X-ray vision," she could not confirm what petitioner was doing behind a locked door. Lastly, petitioner contends that the interview should not have been considered because it violated the confrontation clause of the West Virginia Constitution and the United States Constitution, in addition to due process of law. Upon our review, we find no error.

We have set forth the following standard of review regarding questions of admissibility:

> "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

---

[7]To the extent petitioner argues that the CAC interview was improperly conducted to bolster the DHHR's claims of abuse after it realized it had produced insufficient evidence upon which to adjudicate petitioner, we find no error. Petitioner fails to cite any authority limiting the situations in which a CAC interview may be requested. Moreover, the record is clear that the guardian initiated the CAC interview as part of her investigation into the health and welfare of the child.

6

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). We have also held that "[t]he fundamental requirement of procedural due process in a civil proceeding is 'the opportunity to be heard at a meaningful time and in a meaningful manner.' *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." *Id.* at 402, 758 S.E.2d at 755.

We find that petitioner was afforded procedural due process. He was provided with fundamentally fair procedures including proper notice of the petition, amended petitions, and proceedings pursuant to West Virginia Code § 49-4-601. The circuit court appointed petitioner counsel, and he had a full and fair opportunity to review and present evidence at the adjudicatory and dispositional hearings. Petitioner viewed the videotaped interview of the child prior to the adjudicatory hearing and was given the opportunity to rebut this evidence. Notably, petitioner did not present expert testimony to rebut the allegedly incorrect techniques employed by the interviewer or the alleged coaching of the child. Finally, petitioner was provided a record of the proceedings below along with the right of appellate review.

Moreover, we find no merit in petitioner's claim that consideration of the recorded interview violated his rights under the Confrontation Clause or his right to cross-examine witnesses. We have previously held that

> [i]n a child abuse and neglect civil proceeding held pursuant to West Virginia Code § [49-4-601], a party does not have a procedural due process right to confront and cross-examine a child. Under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

*In re J.S.*, 233 W. Va. at 398, 758 S.E.2d at 750, syl. pt. 7. Accordingly, these arguments are without merit.

We next turn to the admissibility of the interview as an out-of-court statement. In reviewing the circuit court's admission of this evidence, we begin with the well-established rule that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990). Clearly, the recorded interview in the instant matter was hearsay as it was offered to prove the truth of the matter asserted. However, we find that the CAC interview was properly admitted as falling under the residual

7

exceptions to the hearsay rules embodied in West Virginia Rules of Evidence Rule 807.[8] This Court has held that

> [t]he language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) [now 807] requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence. Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

*In re J.S.*, 233 W. Va. at 407, 758 S.E.2d at 760.

In looking at the first of the five factors, we find that the statement is trustworthy. Although petitioner claims that the interview should not have been considered because it was not under oath, we note that the recorded interview of the child at issue in *In re J.S.* was not sworn either, but was the product of an interview performed at a Just for Kids Center in Oak Hill, West Virginia, by an employee with that child services agency. The Court in *In re J.S.* found that the recorded interview of the child was admissible under the residual exceptions to the hearsay rules, despite the fact that the child's statements were not under oath. Here, the interview was also performed by a child

---

[8]The residual exceptions to the hearsay rules permit the admission of hearsay statements that do not fall within one of the traditional exceptions. Rule 807 provides as follows:

(a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

(b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

services agency and the forensic interviewer in the instant matter testified that there were elements of credibility in the child's statements, such as her ability to draw a picture of the sword used by petitioner to assault the mother. Further, the forensic interviewer opined that the child had not been coached. Second, this evidence is clearly probative on the material issue of whether the child was abused and/or neglected. Third, the circuit court watched the CAC interview and was in the best position to determine if it was more probative on the point for which it was offered than other evidence and whether it was sufficiently trustworthy and reliable. Specifically, the circuit court found that the child "seemed forthright in the interview" and that she was "forthcoming and trustworthy in her statement." Fourth, the interest of justice would be served by admission of these statements considering that the circuit court noted that there was a rebuttable presumption of psychological harm to the child and expressed concerns over "just drag[ging] a child that young into the courtroom." Finally, the DHHR provided notice that it intended to offer this evidence, and petitioner was provided with a fair opportunity to prepare a defense to the evidence. Based on the foregoing, we find no error in the circuit court's decision to admit and consider the CAC interview of the child.

Petitioner also assigns as error the circuit court's adjudication of him as an abusing parent. According to petitioner, he never abused or neglected the child and the evidence adduced below establishes his innocence of any abuse or neglect.

We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, a "neglected child" is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian.

Here, sufficient evidence existed to adjudicate petitioner as an abusing parent. The circuit court found that petitioner abused and neglected the child based upon his drug abuse. The circuit

9

court relied upon its own observations of petitioner's intoxication at the January 3, 2019, hearing, as well as petitioner's later concession that he was as "high as a kite" on that date and was slurring his speech due to having taken Xanax prior to the hearing. Further, in petitioner's motion for an improvement period, he admitted that he had a history of drug addiction, that he relapsed, and that his drug addiction negatively impacted his ability to properly parent the child. The circuit court also found that there was clear and convincing evidence that petitioner abused drugs while the child was in his care, contrary to his statements otherwise. The circuit court referenced portions of the recorded phone calls between the mother and petitioner wherein the mother told petitioner that she called him during her own incarceration in December of 2018, and that petitioner was "wacked out." The record is clear that petitioner had custody and control of the child during that time and until she was removed from his care at the January 3, 2019, hearing. Moreover, the circuit court found that the forensic interviewer's testimony was reliable and that the child's statements regarding petitioner's drug abuse were corroborated by petitioner's own testimony. Ultimately, the circuit court found that petitioner's drug abuse threatened the health and welfare of the child and that his threats to the child that she would be placed in foster care if she disclosed his drug abuse was emotionally abusive and threatened the child's welfare as it essentially encouraged her not to seek help. While petitioner argues that the CPS worker testified that a thorough investigation was conducted and that no substantiation of abuse had been made, he ignores the fact that she later testified that the situation had evolved and that her assessment had changed. Based on the foregoing, we find no error in the circuit court's adjudication of petitioner as an abusing parent as the evidence supports a finding that his drug abuse affected his ability to parent the child and that he failed to provide adequate supervision of the child as a result.

Petitioner lastly argues that the circuit court erred in having ex parte communications without his attorney present. Petitioner contends that he was prejudiced by these communications because, as a result of the disclosures made by other attorneys to the circuit court, he was ordered to submit to a drug screen over his objection when he was a nonabusing parent and was not represented by counsel. According to petitioner, the circuit court erroneously ordered him to submit to a drug screen in violation of his Fourth Amendment rights. We find that petitioner is entitled to no relief in this regard.

Although the DHHR concedes that ex parte communications did occur, under the limited circumstances of this case, we find that petitioner was not prejudiced by the January 3, 2019, drug screen. In its order adjudicating petitioner as an abusing parent, the circuit court noted that it was not relying on the drug screen results as there had been no confirmation by a laboratory. Therefore, the result of the ex parte communication—the drug screen results—was not used to adjudicate petitioner. Rather, the circuit court relied on its own observations that petitioner appeared intoxicated and petitioner's concessions during later hearings that he was as "high as a kite" and was slurring his speech due to having taken Xanax prior to that hearing. Further, the circuit court relied on other proper factors in adjudicating petitioner, such as the child's disclosures during the CAC interview. The child disclosed that she witnessed petitioner "chew pills" and that he acted "weird" after doing so. The child also described that she knew where the drugs were located, when petitioner consumed them, and that she was not allowed to touch the drugs. The child also disclosed that petitioner threatened that she would be placed in foster care if she disclosed his drug use. Accordingly, under the limited circumstances of this case, we find that petitioner was not prejudiced by the circuit court's ex parte communications with the other attorneys at the January

3, 2019, hearing while petitioner was not represented or by the resulting drug screen, as the circuit court did not rely on those results and there was ample evidence apart from the drug screen results upon which petitioner was properly adjudicated.[9]

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 9, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[9]Because we find that petitioner was not prejudiced by the drug screen, we decline to address his argument regarding the applicability of the Fourth Amendment.