346 S.E.2d 58

**John R. KELLER, et al.**

v.

**Kemp LANDIS, et al.**

**No. 16928.**

Supreme Court of Appeals of West Virginia.

July 9, 1986.

Adams & Fisher, Robert D. Fisher, Ripley, for appellant.

Goodwin & Goodwin, Stephen P. Goodwin and Ellen Maxwell-Hoffman, Charleston, for appellee.

PER CURIAM:

This case involves a disputed boundary line. The plaintiffs, John and Evelyn Keller, filed suit to establish the location of the boundary line between their land and that of their neighbors, Kemp and Eurada Landis, the defendants below. The boundary line in dispute is the southern boundary of the Keller property and the northern boundary of the Landis property. At the conclusion of the trial, the circuit court directed a verdict in favor of the plaintiffs. The only question in this appeal is whether the court was correct in doing so.[1] For the reasons set forth below, we affirm.

---

1. The appellants, Kemp and Eurada Landis, also assign as error the court's refusal to permit a view of the property. However, we need not address this issue because of our holding here that the trial court correctly directed a verdict.

The Kellers purchased their land in 1968 and Mr. and Mrs. Landis bought their property in 1972. The land in question is located in Jackson County, West Virginia and has been owned by various members of the parties' families throughout the years.

Both tracts of land involved in this proceeding were derived from a partition action in 1931 and were first surveyed and described pursuant to that action. A plat of the survey was submitted by the plaintiffs as their Exhibit B. That plat indicates that Lot No. 6, currently owned by the Landises, consisted of 33 acres and 125 rods; Lot No. 7, currently owned by the Kellers, consisted of 33 acres and 75 rods. The acreage noted on the original plat is identical to that listed in the respective deeds of the parties. The disputed boundary line is designated in the original plat as "N.75–W,120P." Various documents admitted into evidence indicate that this description has remained constant since 1931.

The current dispute arose when the plaintiff, John Keller, decided to build a fence on the southern boundary of his property which as we have noted, abuts the Landis property. He and the defendants were unable to agree upon a common line and the case ultimately resulted in a lawsuit. In a pre-trial order entered on November 29, 1984, the plaintiffs contended that the disputed boundary line had been established in 1931 and that since that time the line had not been altered. The defendants' argument was that although the boundary line had originally been set in 1931, it had been altered and changed through the years by the doctrine of adverse possession and/or by agreement between the parties and their predecessors in title.

At trial the plaintiffs presented the testimony of a surveyor, William Whitman, whom they had employed to survey their property. Mr. Whitman's 1983 survey was admitted into evidence as Plaintiff's Exhibit A. Mr. Whitman first testified that he found a closure error in both the Landis deed and the Keller deed when he calculated the deed descriptions for their degree of accuracy. Following his survey, he mathematically corrected the descriptions involved to make them close and then attempted to place a line that would agree with both descriptions accurately. To ascertain the disputed boundary line, Mr. Whitman conducted a traverse survey using stones and natural monuments and measured the distances called for in the deeds to compare the actual land to its stated description. He found the fence lines and angles basically consistent with the deed calls.

As a result of his survey, Mr. Whitman located the disputed boundary line, designated in both deeds as "N.75–W,120P." at "N.71°33'W." That line was marked on the 1983 survey plat prepared by Mr. Whitman as running from a designated point "x" to a point designated as "y". The surveyor testified that the line from "x" to "y" was the same line described in the deeds, and that the difference in the calls was due to a change in the bearings since the land was originally surveyed.[2]

The defendants' surveyor, Harold Starcher, was of the opinion that the disputed boundary line would lay "roughly" 70 feet north of the line "x—y" designated by Mr. Whitman. He reached this conclusion by running a line from a single point in the line "x—y" to posts set near a cemetery on the northern boundary of the Keller property and finding the line to the cemetery to be 70 feet short. He did not survey the entire tract of land and although he walked certain distances to measure certain hash marks and other identifiable marks, he did not measure those distances. Mr. Starcher testified that using his calculations and moving the line 70 feet north, the area of land in dispute would consist of approximately nine acres.

The defendants introduced the testimony of several other witnesses who were familiar with the land involved. Although each of the witnesses had an opinion as to where

2. Mr. Whitman explained that this difference is caused by the fact that although the north remains constant, magnetic north moves and is different at any particular point in time. He used isotonic charts prepared by the federal government to ascertain the difference.

the disputed boundary line lay, no one was able to testify about the exact location, only as to its general area, and there was no agreement as to an exact common boundary line.

At the conclusion of the testimony, the trial court granted the plaintiffs' motion for a directed verdict and instructed the jury to enter the following verdict: "We, the jury, at the direction of the Court find that the true boundary line between the lands of the Plaintiffs and the lands of the defendants is the line from point 'x' to point 'y' shown on Plaintiff's Ex. 'A'." The court entered a final order in accordance with the jury verdict. It is from this final order that the defendants appeal.

■ The rule in this State is that:

" 'Where the evidence given on behalf of the defendant is clearly insufficient to support a verdict for him so that such verdict if returned by a jury, must be set aside, and the evidence of the plaintiff is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff.' Point 5 Syllabus, *Sommerville v. The Pennsylvania Railroad Co.*, 151 W.Va. 709, 155 S.E.2d 865.' " Syllabus Point 4, *Jones, Inc. v. W.A. Wiedebusch Plumbing and Heating Co.*, 157 W.Va. 257, 201 S.E.2d 248 (1973).

■ In this case the trial judge definitively stated his reasons for directing a verdict against the defendants on the record. First, the court found that there was insufficient evidence to prove title through adverse possession and that the defendants had failed to prove that the location of the boundary line in dispute had been changed by agreement. Both of these findings are supported by the record. Second, the court found that the survey performed by William Whitman was an accurate survey and further, that although the defendants' surveyor, Mr. Starcher, took issue with the line found by Mr. Whitman, the defendants failed to state any boundary markers or directions to enable the jury to ascertain the true location of a line if they should prevail. Because of the lack of evidence presented by the defendants to establish a boundary line, the

court concluded that should the jury return a verdict for the defendants it would have to be set aside as contrary to the law and the evidence.

After reviewing the evidence presented on behalf of the plaintiffs and the defendants, we are unable to say that the trial court was incorrect in directing a verdict for the plaintiffs. We, like the trial court, are especially persuaded by the fact that the parcels of land involved in this dispute were both first surveyed and described in 1931 out of a common partition suit with each parcel of land being described as approximately 33 acres. The defendants' surveyor would alter that acreage by as much as nine acres. Like the trial court, we find this an incredible result.

■ In addition, we concur with the court's ruling that the defendants failed to present evidence from which the jury could have established the boundary line. The purpose of the lawsuit was to fix the exact location of the disputed line. The vague and uncertain testimony of the defendants' surveyor that the appropriate line would be "roughly" or "approximately" 70 feet north of where plaintiffs' surveyor placed the line is inadequate to support a verdict.

Accordingly, the judgment of the Circuit Court of Jackson County is affirmed.

Affirmed.