375 S.E.2d 568

**Donley CRAMER and Lillian Wallace**

v.

**WEST VIRGINIA DEPARTMENT OF HIGHWAYS, a Corporation, and William Ritchie, Commissioner of Department of Highways.**

**No. 17302.**

Supreme Court of Appeals of West Virginia.

Nov. 21, 1988.

David P. Brown, Frank B. Everhart, Everhart, Brown & Snyder, Kingwood, for Cramer & Wallace.

Paul E. Parker, Jr., Fairmont, Charles V. Wehner, Kingwood, for W.Va. Dept. of Highways.

PER CURIAM:

This appeal from the final order of the Circuit Court of Preston County (the "trial court") presents the question of whether there was sufficient evidence to support the jury's determination that the road in question was a public road. We believe the evidence was clearly insufficient for such a determination. We also believe the appellants' motion for judgment notwithstanding the verdict should have been granted. Accordingly, we set aside the jury verdict and reverse the trial court's final order.

I

The appellants, Donley Cramer and Lilliam Cramer Wallace, and members of their family, have treated the unpaved, rock-based road in question as a private road across their property to their farm buildings form 1908 to the present. The appellants and members of their family, personally and at their expense, have maintained the road in question by ditching the road, placing rock and stone on the road and digging a drain culvert for water run-off. The road is generally six-feet wide. Gates across the road were not locked until 1971.

The appellees, the West Virginia Department of Highways and the Commissioner thereof, contend that the road in question—which the appellees have designated as State Route 106/1—is a public road. It runs in a northerly direction starting at its intersection with State Route 106. The latter is a public road running east and west and is known as Big Bucklick Run Road. The road in question runs from State Route 106 for about 0.46 of a mile; then runs across the appellants' 100–acre tract and continues in a northerly direction across two more tracts of real estate owned by others to State Route 53/1, known as Little Bucklick Run Road. State Route 53/1 has been impassable for at least the last twenty-five years. The portion of the road in question past or north of the appellants' farm buildings has likewise been impassable by vehicular traffic for at least the last thirty-five years. The entire length of the subject road between Routes 106 and 53/1 is about 2.2 miles.

The record indicates that the appellees graded only the extreme southern portion of the subject road, a stretch of road south of the appellants' southern boundary, measuring about 0.46 of a mile in length, from State Route 106 to the appellants' first or southern gate. This portion of the road was graded by the appellees approximately four or five times: once in the mid–1950's, twice in the 1960's, and once or twice in the last twenty years or so. At the request of the appellants' mother, the then owner of the Cramer 100–acre tract, the appellees operated a snowplow once on the subject road up to the Cramer house and barn in the early to mid–1960's.

The record also indicates that the public for an unspecified length of time, mostly in the early to mid–1930's, drove their vehicles the entire 2.2–mile length of the road in question by opening the then unlocked gates across the road.

The appellants were unaware that anyone thought the road in question was a public road until the fall of 1984, when appellant Donley Cramer was arrested on a warrant for obstruction of a public road (by a locked gate), at the instance of Robert DeWitt, a neighbor who owned the tract immediately north of the Cramer tract. Shortly thereafter, the appellees served the appellants with a notice to remove a road obstruction.

The appellants subsequently brought a proceeding to enjoin the appellees from interfering with the appellants' private use of the road in question and to determine whether such road was a public or private road. The appellees thereafter brought a proceeding against appellant Donley Cramer to have him remove a road obstruction, specifically, a locked gate across the road in question. The two proceedings were consolidated for trial on the issue of whether the subject road was a public or private road.

After the appellees presented their evidence on public use and maintenance of the

road in question, the trial court denied the appellants' motion for a directed verdict. The jury found that the road was a public road. The trial court subsequently denied the appellants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

## II

In this appeal the appellants argue that the evidence presented by the appellees, when viewed in the light most favorable to the appellees, was manifestly inadequate to prove by clear and convincing evidence [1] that the road in question was a public road by virtue of prescriptive use thereof by the public and regular public maintenance thereof, as set forth in *W.Va.Code*, 17–1–3 [1963] and case law.[2] We agree.

In this jurisdiction a private road may become a public road by one of three ways: (1) condemnation, or (2) dedication and acceptance or by (3) continuous and adverse public use for the period of ten years required by *W.Va.Code*, 17–1–3 [1963], accompanied by official recognition that the road is public, as by regular public maintenance or by an order of recognition. *Wilson v. Seminole Coal, Inc.*, 175 W.Va. 518, 519, 336 S.E.2d 30, 31 (1985); syl. pt. 2, *Reger v. Wiest*, 172 W.Va. 738, 310 S.E.2d 499 (1983); *State ex rel. Riddle v. Department of Highways*, 154 W.Va. 722, 725, 179 S.E.2d 10, 13 (1971). The appellees have not contended that the road in controversy became a public road by condemnation or dedication. Instead, their theory of the case has been that the road became a public road by operation of *W.Va.Code*, 17–1–3 [1963].

Mere use of the road by the public will not make the road a public road, even if the public uses the road continuously and adversely for the period of ten years required by *W.Va.Code*, 17–1–3 [1963]. *Wilson v. Seminole Coal, Inc.*, 175 W.Va. 518, 519, 336 S.E.2d 30, 31 (1985) (and cases cited therein). In addition to such use, public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it. *Wilson v. Seminole Coal, Inc.*, 175 W.Va. 518, 519, 336 S.E.2d 30, 31 (1985); *State ex rel. Riddle v. Department of Highways*, 154 W.Va. 722, 725, 179 S.E.2d 10, 13 (1971); *State Road Commission v. Oakes*, 150 W.Va. 709, 716, 149 S.E.2d 293, 298 (1966); syl. pt. 2, *Baker v. Hamilton*, 144 W.Va. 575, 109 S.E.2d 27 (1959); syl. pt. 1, *Monk v. Gillenwater*, 141 W.Va. 27, 87 S.E.2d 537 (1955); *Derifield v. Maynard*, 126 W.Va. 750, 754, 30 S.E.2d 10, 12 (1944). It is clear that sporadic or occasional use of the road by the public will not make the road a public road. *Reger v. Wiest*, 172 W.Va. 738, 741, 310 S.E.2d 499, 502 (1983).

In previous cases this Court has held that isolated and sporadic instances of public maintenance will not suffice to meet the requirements of *W.Va.Code*, 17–1–3 [1963]. *Wachter v. Fowler*, 179 W.Va. 272, 367 S.E.2d 220 *passim* (1988); *Collins v. Ritchie*, 177 W.Va. 229, 232, 351 S.E.2d 416, 418 (1986); *Wilson v. Seminole Coal, Inc.*, 175 W.Va. 518, 520, 336 S.E.2d 30, 32 (1985); *Teter v. Teter*, 163 W.Va. 770, 774, 260 S.E.2d 270, 273 (1979); *Monk v. Gillenwater*, 141 W.Va. 27, 31, 87 S.E.2d 537, 540

---

1. "Clear and convincing evidence" or "clear, cogent and convincing evidence" is the highest possible standard of civil proof and is defined as that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. *Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 510, 250 S.E.2d 369, 374 (1978).

Clear and convincing evidence is necessary to establish a prescriptive easement. Syl. pt. 2, *Hanshew v. Zickafoose*, 173 W.Va. 151, 313 S.E.2d 427 (1984).

2. *W.Va.Code*, 17–1–3 [1963] provides in pertinent part:

[S]uch public road or highway shall be taken to include any road to which the public has access and which it is not denied the right to use, or any road or way leading from any other public road over the land of another person, and which shall have been established pursuant to law. Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.

(1955). This point is set forth in syllabus point 3 of *Baker v. Hamilton*, 144 W.Va. 575, 109 S.E.2d 27 (1959), a case involving some periodic scraping of the road and filling of holes:

> In order that a road, by virtue of Section 3, Article 1, Chapter 17, Code, 1931, shall be conclusively presumed to be established as a public road, it must have been used by the public for a period of ten years or more and public moneys or labor, duly authorized by a public agency or official empowered to maintain, repair or accept such road, must be expended on it; and the occasional expenditure of public money or the occasional performance of public labor on such road, which is not so authorized, even though such road has been used by the public for ten years or more, does not satisfy the requirements of the statute or render effective the statutory presumption of its establishment as a public road.

In many of these cases, such as *Baker v. Hamilton*, we have emphasized the lack of authorization by a public official responsible for making maintenance decisions as much as, if not more than, the quantum or frequency of work involved, but even authorized work can fail to satisfy the requirements of *W.Va.Code*, 17-1-3 [1963], where it is very infrequent. *Collins v. Ritchie*, 177 W.Va. 229, 231-32, 351 S.E.2d 416, 418 (1986); *Wilson v. Seminole Coal, Inc.*, 175 W.Va. 518, 520, 336 S.E.2d 30, 32 (1985) (and cases cited therein).

In the present case the evidence, viewed in the light most favorable to the appellees, was clearly insufficient to establish that the road in controversy is a public road under *W.Va.Code*, 17-1-3 [1963]. The appellees failed to prove by clear and convincing evidence that the subject road was used adversely by the public for a definite number of consecutive years, much less for the required period of ten consecutive years. Moreover, the evidence establishes only sporadic public maintenance, and only on a portion of the road not traversing the appellants' property. Certainly no jury question was presented on these matters.

### III

The appellants moved for a directed verdict and subsequently moved for judgment notwithstanding the verdict, pursuant to *W.Va.R.Civ.P.* 50(b).[3] This Court recently discussed the principles applicable to a motion for judgment notwithstanding the verdict. In *McClung v. Marion County Commission*, 178 W.Va. 444, 453-54, 360 S.E.2d 221, 230-31 (1987), we stated the following. A motion for judgment notwithstanding the verdict provides the trial court with an opportunity, after the jury has been discharged, to reconsider its previous refusal to grant a motion for a directed verdict made at the close of all of the evidence. A motion for judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. The same factors as to the sufficiency of the evidence which are examined in deciding a motion for a directed verdict apply also when ruling upon a motion for a judgment notwithstanding the verdict. Thus, in considering a motion for judgment notwithstanding the verdict, the trial court and the appellate court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury's verdict.

---

3. *W.Va.R.Civ.P.* 50(b) provides:

(b) *Motion for judgment notwithstanding the verdict.*—Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

In syllabus point 5 of *Sommerville v. Pennsylvania R.R.*, 151 W.Va. 709, 155 S.E.2d 865 (1967), the Court held:

Where the evidence given on behalf of the defendant is clearly insufficient to support a verdict for him so that such verdict, if returned by a jury, must be set aside, and the evidence of the plaintiff is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff.

*Accord*, syl., *Keller v. Landis*, 176 W.Va. 540, 346 S.E.2d 58 (1986); syl. pt. 4, *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 257, 201 S.E.2d 248 (1973). *See also* syl. pt. 4, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749 (1986) (same rule in favor of defendant).

We believe the above quoted holding of *Sommerville* and its progeny is applicable to the present case. Accordingly, we set aside the jury verdict and reverse the trial court's final order denying the appellants' motion for judgment notwithstanding the verdict.[4]

REVERSED.

---

**4.** Due to our disposition of this appeal on the issue of the sufficiency of the evidence on the public use and maintenance of the subject road, we need not address the appellants' other assignments of error.