**FILED**

**February 25, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.M.**

**No. 23-211** (Wood County CC-54-2022-JA-68)

**MEMORANDUM DECISION**

Petitioner Father O.B. ("Petitioner")[1] appeals the Circuit Court of Wood County's January 16, 2023, order terminating his parental rights to A.M., arguing that termination was improper because (1) there was insufficient evidence to adjudicate him as a neglectful parent; and (2) the circuit court did not "make the requisite findings" to support its adjudicatory order. This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon review, we find no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

A.M. was born in June of 2021. The DHS filed a second amended petition shortly after her birth, noting that A.M.'s mother ("Mother") had relapsed on methamphetamine and heroin, and was incarcerated.[2] The petition also noted that A.M. "showed some symptoms of possible withdrawal [sic] after her birth." Paternity had not been established when this petition was filed. Mother informed the DHS that she believed Petitioner was

---

[1] Petitioner appears by counsel Ryan Ruth. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael D. Farnsworth, Jr., appears as A.M.'s guardian ad litem. We use initials to protect the identities of the juveniles involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies: the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] The original and first amended petitions naming Mother as a respondent involved A.M.'s older sibling, A.S. Petitioner is not A.S.'s father and A.S. is not at issue in this appeal.

A.M.'s father. In July of 2021, the circuit court ordered Petitioner to undergo a paternity test.

Mother's dispositional hearing was held on November 9, 2021. Mother did not contest the termination of her parental rights to A.M. During this hearing, the circuit court noted that Petitioner's paternity test confirmed that he was A.M.'s father. The DHS, guardian ad litem, and CASA[3] recommended that the circuit court enter an order gradually transitioning A.M. from the foster home, where A.M. had resided since birth, to Petitioner. The circuit court agreed and ordered that the transition process begin immediately and be completed prior to the next hearing. The circuit court held a status hearing regarding the transition on December 14, 2021. Petitioner failed to appear at this hearing. The DHS informed the circuit court that during the transition process, several concerns arose with Petitioner's ability to care for A.M. Because Petitioner failed to appear, the circuit court rescheduled the hearing and noted that visitation and services should continue to be provided to Petitioner.

The DHS filed a fourth amended petition[4] on January 10, 2022, alleging that Petitioner neglected A.M. during the transition period. The petition indicated that Petitioner worked full time and did not arrange for childcare while he was working. Further, the petition noted a number of concerns with Petitioner's ability to care for A.M. including that (1) Petitioner did not have adequate supplies including diapers, wipes, formula, or bottles; (2) Petitioner's home had "a very strong odor of marijuana and . . . that the home is very cold, being heated only by a cook stove;" (3) Petitioner failed to have adequate food for A.M. during their visitations; and (4) the DHS had been informed that Petitioner was behind on his rent and could face eviction.

In February of 2022, the circuit court held two adjudicatory hearings on the fourth amended petition. After the second hearing, Petitioner's counsel moved to dismiss the petition for lack of evidence. The circuit court held the motion to dismiss in abeyance and ordered Petitioner to have overnight visitations with A.M. that would increase incrementally over a six-week period. The circuit court ordered Petitioner to provide all items necessary for A.M.'s care during these visits. Petitioner told the circuit court that he

---

[3] CASA is the acronym for Court Appointed Special Advocate. Rule 52(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings allows circuit courts to appoint CASA representatives in abuse and neglect proceedings "to further the best interests of the child until further order of the court or until permanent placement of the child is achieved."

[4] A third amended petition was previously filed, naming another potential father, A.J. After paternity testing confirmed that Petitioner was the father, A.J. was dismissed from the case.

would comply with this visitation schedule, obtain the necessary supplies to care for A.M., and arrange for childcare while he was at work.

On April 4, 2022, the DHS filed its fifth amended petition.[5] This petition alleged that Petitioner neglected A.M. between February and March of 2022. Specifically, it alleged that Petitioner had one unsupervised overnight visitation with A.M. on February 25, 2022, and that a service provider picked A.M. up on February 26, 2022. After this unsupervised overnight visit, the foster parents reported that A.M. had bruises and marks on her legs, backs, and arms that had not been present prior to A.M. being in Petitioner's custody.[6] Further, the petition asserted that after the overnight visit in February, Petitioner refused additional overnight visits or failed to respond to text messages sent from providers seeking to schedule the remaining court-ordered visitations to which Petitioner had previously agreed. The petition provided:

> By failing to participate in the court ordered unsupervised visitation time with his child between February 28 and March 27, 2022, the Respondent Father has exhibited a refusal, failure, and/or inability to supply the child with the necessary food, clothing, shelter, supervision, medical care, or education, which refusal, failure, and/or inability was not due primarily to lack of financial means. Throughout that time period, Respondent Father failed to provide for the care of the child as ordered by the Court, despite assuring the Court that he was willing and able to do so. Thus, but for the child being in the care and custody of the Department during that time, the child's basic needs for food, shelter, and everyday care would not have been met.

On April 26, 2022, the circuit court held an adjudicatory hearing on the fifth amended petition. Petitioner testified at this hearing. He stated that he did not participate in the court-ordered visitations after February 26, 2022, because he did not have childcare while he was working and did not follow up with the childcare providers that the DHS recommended. Petitioner also testified that he failed to keep in contact with the DHS during the transition period and admitted that on multiple occasions when service providers tried to schedule a visit, he did not reply to their messages. Petitioner offered several excuses for failing to respond including that his phone was off and that "she [the service

---

[5] After the DHS advised the circuit court that it was filing a fifth amended petition, the circuit court entered an order dismissing the fourth amended petition.

[6] While the fifth amended petition states that the foster parents reported that A.M. had marks and bruises after the overnight visit with Petitioner, the petition does not allege that Petitioner physically abused A.M.

provider] left the message too late." Petitioner stated that he contacted Choices, a childcare agency suggested by the DHS, but he did not fill out their application because he did not want to utilize their services.

At the conclusion of the adjudicatory hearing, the circuit court announced its finding that Petitioner neglected A.M. and that his actions threatened A.M.'s health and welfare: "The child's physical or mental health was threatened by the father's failure." The circuit court's May 20, 2022, adjudicatory order provided:

> The Court FINDS that the Respondent Father has exhibited a failure or refusal to provide for the child with the necessary food, clothing, shelter, supervision, medical care, or education, and such failure or refusal was not due primarily to a lack of financial means, as the Respondent Father testified to having employment and steady income. The Court further FINDS that the Respondent Father admitted that he failed to respond to the visitation supervisor to participate in the visitation designed to transition the child into his home, which was ordered by this Court. The Court notes that the Respondent Father testified that he did not participate in this visitation for the second, third, fourth, and fifth week that it was to take place because he did not have childcare for the child for the times he had to work after ending his relationship with his girlfriend, despite being aware of other options such as Choices. The Court FINDS and CONCLUDES that Respondent is a neglectful parent, and the child is a neglected child.

On June 16, 2022, the circuit court granted Petitioner a post-adjudicatory improvement period that required him to participate in parenting and adult life skills classes; visit with A.M.; maintain a safe and suitable home; refrain from using any drugs or alcohol; submit to random drug screens; and participate in individual therapy. Between October and December of 2022, Petitioner tested positive for methamphetamine nine times. Despite these positive tests, Petitioner denied using methamphetamine and claimed that his consumption of energy drinks may have led to the positive tests. The circuit court, noting Petitioner's substance abuse and failure to comply with "the family case plan," terminated Petitioner's parental rights by order entered on January 16, 2023, finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was in A.M.'s best interest.[7] Following entry of this order, Petitioner filed this appeal.

---

[7] The permanency plan for A.M. is adoption in her current placement.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner argues that the circuit court erred by terminating his parental rights because (1) there was insufficient evidence to adjudicate him as a neglectful parent; and (2) the circuit court did not "make the requisite findings" to support its adjudicatory order. Upon our review, we find no error.

Petitioner first argues that the fifth amended petition's allegations do not rise to the level of neglect and that the DHS did not introduce "any evidence" demonstrating that A.M.'s physical or mental health was threatened. Specifically, Petitioner states that the fifth amended petition only alleged that A.M. would have been without necessary food, clothing, shelter, supervision, medical care, education, or supervision if A.M. was not in the custody of the DHS. Petitioner argues that because A.M. was in the DHS's custody and her needs were being met, the allegations against him do not rise to the level of neglect. We disagree.

West Virginia Code § 49-1-201 defines a neglected child, in part, as a child whose "physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means."

The fifth amended petition includes a detailed statement of the conduct that constituted Petitioner's neglect of A.M. including his failure to participate in the court-ordered transition process after February 26, 2022, as well as his failure to arrange for childcare. After this detailed statement, the petition provided:

> There exists imminent danger to the infant child due to Respondent Father's refusal to provide for her everyday care. Despite being court-ordered to do so, Respondent Father failed to participate in the transition process and provide for the infant's care and every day needs in any way during the month of March. Further, the Respondent Father admitted that he did not have a way to provide for the infant's care during this time while he was at work, as he did not have a plan for childcare once his relationship [with his girlfriend] ended. The Department has provided services in the home of the Respondent Father, including supervised visitation and providing him with information to find childcare, but these services have not been effective.

Based on the foregoing, we find no support for Petitioner's argument that the fifth amended petition failed to properly allege neglect. Neglect can be established either

5

through actual neglect or actions that *threaten* a child's health and welfare. *See* W. Va. Code § 49-1-201. The fifth amended petition plainly alleges that Petitioner's failure to participate in the transition process and provide for A.M.'s care and every day needs threatened A.M.'s health and welfare. Therefore, we reject Petitioner's argument that the allegations in the fifth amended petition did not constitute neglect.

Next, we find no support for Petitioner's argument that the DHS failed to introduce "any evidence" that A.M.'s physical or mental health was threatened.[8] Prior to the transition process, Petitioner assured the circuit court that he would participate in the visitation schedule and would provide for all of A.M.'s needs during this time, including arranging for childcare while he was working. Despite this assurance, Petitioner admitted that he failed to participate in the transition process after the February 26, 2022, visitation. Petitioner's failure to participate in the transition process was especially egregious considering the service providers' repeated attempts to help him secure childcare and to schedule visitation. After taking no action to secure childcare for A.M., Petitioner simply stopped communicating with the DHS during the court-ordered transition process. We find that Petitioner's lack of participation during the court-ordered transition period, particularly his failure to secure childcare, clearly threatened A.M.'s well-being.[9] Notably,

---

[8] At adjudication, the DHS is required to present clear and convincing evidence to prove the allegations set forth in the petition. *See* W. Va. Code § 49-4-601(i) (requiring that adjudicatory findings "must be . . . proven by clear and convincing evidence"). This Court has explained that this standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988) (citation omitted).

[9] This Court "regularly affirms termination of parental rights" based on a parent's failure to participate in their post-dispositional improvement period. *In re K. L.*, 247 W. Va. 657, 667, 885 S.E.2d 595, 605 (2022); *see* W. Va. Code § 49-4-604(c)(6) and (d)(1)-(3) (permitting termination of parental rights where "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" including failure to respond to or follow through with recommended treatment or refusal to cooperate in development of family case plan). While the instant case involves Petitioner's failure to participate in the court-ordered transition process, rather than an improvement period, we find that both scenarios implicate the same concern, i.e., a parent's willingness to demonstrate that they are able to cooperate with a court-ordered plan in an abuse and neglect case. Similarly, whether we are addressing an improvement period or a court-ordered transition process, the ultimate goal in all abuse and neglect cases is to protect the health and welfare of the child. *See* Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.").

6

A.M. was approximately eight months old during the transition period in February and March of 2022. This Court has stated that

> courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and *this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development [delayed] by numerous placements.*

Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980) (emphasis added).

The undisputed evidence demonstrated that Petitioner failed to participate in the court-ordered transition process after February 26, 2022. Petitioner stopped communicating with the DHS despite its repeated attempts to facilitate visitation with A.M. and to provide childcare options to him. Therefore, we reject Petitioner's argument that the DHS failed to introduce "any evidence" that A.M.'s physical or mental health was threatened.

Petitioner's final argument is that the circuit court did not "make the requisite findings" to support its adjudicatory order. He asserts that the circuit court's adjudicatory order did not find that A.M.'s mental or physical health was threatened by his actions. Instead, according to Petitioner, the circuit court only found that he had not provided statutory necessities during a time when A.M. was in the DHS's custody. We disagree. During the adjudicatory hearing, the circuit court announced its conclusion that "[t]he child's physical or mental health was threatened by the father's failure [to provide basic necessities]." Additionally, the circuit court's adjudicatory order implicitly made this finding by concluding that Petitioner "exhibited a failure or refusal to provide for the child with the necessary food, clothing, shelter, supervision, medical care, or education[.]" The circuit court's oral statement at the adjudicatory hearing, combined with the findings in its adjudicatory order, sufficiently found that A.M.'s physical or mental health was threatened by Petitioner's failure to comply with the transition process. Therefore, we reject Petitioner's argument that the circuit court failed to "make the requisite findings" to support its adjudicatory order.

For the foregoing reasons, we affirm the circuit court's January 16, 2023, order.

Affirmed.

**ISSUED**: February 25, 2025


**CONCURRED IN BY**:
Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

8