**FILED**
**May 6, 2026**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **W.S. and A.P.**

**No. 25-292** (Marshall County CC-25-2023-JA-48 and CC-25-2023-JA-49)

## MEMORANDUM DECISION

Petitioner Mother K.F.[1] appeals the Circuit Court of Marshall County's April 11, 2025, order terminating her parental rights to W.S. and A.P.,[2] arguing that the circuit court erred in adjudicating her as an abusing parent, denying her motion for an improvement period, and terminating her rights. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September 2023, the DHS filed an abuse and neglect petition alleging that the petitioner abused drugs and alcohol; failed to provide then-thirteen-year-old W.S. and then-fifteen year-old A.P. with shelter and supervision; abandoned W.S.; and physically abused A.P.[3] The DHS alleged that the petitioner had not seen W.S. in five or six years and had not provided him with any mental or financial support. According to the DHS, W.S. was in the physical custody of his father until February 2023 at which time he began living with his maternal cousin because his father was unable to provide for his basic needs. The DHS further alleged that the petitioner pled guilty to domestic assault against A.P. in March 2023 and that A.P. was issued a protective order.

In October 2024, the circuit court held an adjudicatory hearing.[4] The circuit court first heard testimony from the petitioner, who admitted that she pled guilty to domestic assault for

---

[1] The petitioner appears by counsel Tyler L. Cline, who filed the brief in accordance with Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure. The petitioner's counsel also filed a motion the petitioner to file a self-represented supplemental brief, which this Court granted. However, the petitioner filed no such brief. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Michael B. Baum appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petition included additional adult respondents who are not at issue on appeal.

[4] We note that more than one year lapsed before the circuit court held the adjudicatory hearing. However, the reasons for such lapse are not relevant to the resolution of this appeal.

1

burning A.P. with a cigarette. However, the petitioner denied that she intentionally burned A.P., stating that she was trying to put out a cigarette and "flipped it at the ashtray, and it rolled, and . . . it got on [A.P.], and [A.P.] said I flipped the cigarette at her, and I didn't." The petitioner conceded that she had a "few beers" at the time of the incident, explained that A.P. lied about the incident because she was mad that the petitioner would not give her a cigarette, acknowledged that two adults witnessed the incident, and claimed that she pled guilty "because [of] [her] lawyer." Additionally, the petitioner testified that W.S. had been living with his father and family friends "for a while" and that A.P. had been living with her maternal grandmother for about seven years. The petitioner claimed that she regularly visited A.P. at the grandmother's home and provided the grandmother with financial assistance. The petitioner also claimed that she bought birthday presents for the children but was unable to give them the presents because she did not know where W.S. was living and a protective order prohibited her from contacting A.P. With regard to the allegations of substance abuse, the petitioner denied having a history of drug abuse but admitted that she "drank alcohol and . . . smoked the store-bought greens." When asked why she had not submitted for a drug test since the filing of the petition, the petitioner claimed, "[E]very time I reported they told me not to report; that I didn't have to be there." However, when the circuit court offered to allow the petitioner to take a drug test during the hearing, she declined.

W.S.'s father testified that W.S. lived with him for five or six years, that the petitioner "[h]ardly ever" had contact with W.S., and that the petitioner did not provide any financial assistance for W.S. He stated that the petitioner knew his phone number and where he lived but only attempted to contact W.S. once or twice a year. The father explained that in December 2022, he placed W.S. with W.S.'s maternal cousin because he was having financial issues and did not place W.S. with the petitioner because her home was not suitable. A Child Protective Services ("CPS") worker then testified that when she conducted her investigation, she spoke with both children, who indicated that the petitioner was not actively participating in their lives and that they were scared of returning to her custody. At the conclusion of the hearing, the circuit court found that the petitioner's inability "to put together a . . . chronology of who was with these kids and who had them and where they were [was] very concerning." The court also observed that the petitioner declined to take a drug screen. As a result, the court adjudicated the petitioner as an abusing parent and W.S. and A.P. as abused and neglected children.

In December 2024, the petitioner filed a motion for an improvement period, and in January 2025, the circuit court held a hearing on the petitioner's motion. The petitioner testified that, in November 2024, she began receiving therapy and treatment for liver failure and attended one parenting class provided by the DHS. She explained that the parenting class provider "dropped her" after she missed one class. Additionally, the petitioner claimed that she still had not participated in drug and alcohol screening because she did not have an identification card or transportation and had many medical appointments. The petitioner also stated that she did not "see where [she] was abusive and neglectful" because she "never mistreated [W.S.] or beat him or anything like that" and her domestic assault of A.P. "was in the past." On cross-examination, the petitioner admitted that her treatment team recommended that she attend an inpatient treatment program for her alcohol abuse because she was in liver failure and was drinking four beers per day. She explained that she refused treatment because "it's not like that anymore" because she only drinks "like, half a beer." After hearing the petitioner's testimony, the circuit court found that the petitioner failed to demonstrate that she was likely to fully participate in an improvement period

because she had not availed herself of any services offered by the DHS. As such, the circuit court denied the petitioner's motion for a post-adjudicatory improvement period.

In February 2025, the circuit court held a dispositional hearing. The petitioner did not appear but counsel represented her. A CPS worker testified that the DHS recommended terminating the petitioner's parental rights due to her minimal participation. The worker also testified that both children did not wish to speak with the petitioner now or in the future. After considering the evidence and taking judicial notice of prior testimony throughout the proceedings, the circuit court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. The court further found that termination of the petitioner's parental rights was necessary for the children's welfare as they needed continuity of care and caretakers and a significant amount of time was required to integrate them into a stable and permanent home. Thus, the circuit court terminated the petitioner's parental rights to the children.[5] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court the petitioner first argues that the circuit court erred in adjudicating her because the DHS did not prove by clear and convincing evidence that she abused or neglected the children. We disagree.

The petitioner's challenge to the sufficiency of the DHS's evidence is governed by the following:

> [West Virginia Code § 49-4-601(i)], requires the [DHS], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden.

Syl. Pt. 1, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981). This Court has explained that "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, a "neglected child" is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." This section also defines an "abused child," in part, as one "whose health or welfare is being harmed or threatened by . . . [d]omestic violence as defined in § 48-27-202 of this code." According to West Virginia Code § 48-27-202, domestic violence means "the occurrence of one or more of the following acts between family or household members, as that term is defined in section two hundred four of this

---

[5] The permanency plan for W.S. is a legal guardianship in his current placement. A.P. has since reached the age of majority.

article: (1) [a]ttempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons."

Here, the DHS presented testimonial evidence demonstrating that the petitioner had not provided the children with shelter or supervision in several years. In fact, the petitioner testified that she did not know where W.S. was living and was prohibited from contacting A.P. Regarding domestic violence, the petitioner argues that flicking a cigarette towards A.P. "certainly does not rise to the level of domestic violence," despite the fact that she was convicted criminally of domestic assault as a result of this conduct. While the petitioner argues that her conviction "should not and cannot be the sole basis of adjudication," she ignores the fact that she was adjudicated upon several grounds in addition to this act and she cites no authority prohibiting consideration of criminal conduct at adjudication. Furthermore, the petitioner admitted that she consumed multiple alcoholic beverages on the night of the domestic violence incident. Moreover, the circuit court heard the petitioner's testimony claiming that she provided for the children's basic needs while out of her care, which W.S.'s father and the CPS worker directly contradicted. The circuit court clearly exercised its authority to assign weight and credibility to the evidence presented, and we decline to disturb its determinations on appeal. *See In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025) (explaining that, when reviewing decisions of a circuit court in abuse and neglect proceedings, "[w]e . . . do not reweigh the evidence or make credibility determinations"). As such, we find no error in the circuit court's adjudication of the petitioner as an abusing parent.

Next, the petitioner argues that the circuit court abused its discretion by denying her motion for a post-adjudicatory improvement period because she provided clear and convincing evidence that she was likely to fully participate. Indeed, to receive a post-adjudicatory improvement period, a parent must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). However, "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). We have explained that "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). At the hearing on her motion, the petitioner refused to acknowledge that her conduct constituted abuse and neglect of the children, and she admitted that she failed to participate in services provided by the DHS for more than one year, namely, drug and alcohol screens and parenting classes. Therefore, the circuit court did not abuse its discretion by denying the petitioner's motion for an improvement period.

Finally, the petitioner argues that the circuit court erred in terminating her parental rights because the DHS failed to prove that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect in the near future. We disagree. A circuit court may properly find that there is no such likelihood when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d). Here, the record shows that the petitioner failed to avail herself of any services provided by the DHS and refused to participate in the recommended inpatient treatment program. As such, the evidence supports the circuit court's finding that the petitioner could not substantially correct the conditions of abuse and neglect in the near future. Furthermore, the circuit court's

finding that termination of the petitioner's parental rights was necessary for the children's welfare is well-supported by the record. Accordingly, the circuit court did not err in terminating the petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate parental rights upon finding no reasonable likelihood the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare).

For the foregoing reasons, we affirm the circuit court's April 11, 2025, order.

Affirmed.

**ISSUED:** May 6, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

5