**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **A.L. and B.L.**

**No. 25-437** (Wayne County CC-50-2024-JA-38 and CC-50-2024-JA-39)


**MEMORANDUM DECISION**


Petitioner Father D.L.[1] appeals the Circuit Court of Wayne County's June 3, 2025, order terminating his parental rights to A.L. and B.L., arguing that the circuit court erred by adjudicating him of abusing B.L. and terminating his parental rights to A.L. and B.L.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2024, the DHS filed a petition alleging that the petitioner sexually abused B.L. in the family home where A.L. also resided. The DHS further alleged that B.L.'s mother, who was the petitioner's wife, contacted law enforcement after B.L. disclosed that the petitioner sexually abused her. During a forensic interview, the child made disclosures consistent with those she made to her mother.

On July 10, 2024, the circuit court held an adjudicatory hearing at which B.L.'s forensic interviewer testified, discussing her credentials and training, and recounted then-five-year-old B.L.'s disclosures. Specifically, the interviewer explained that she received Child First training for forensic interviews and participated in continuing education courses, additional training, and peer review exercises. The interviewer testified to her interview with B.L., which was conducted in a manner consistent with her training and education. The interviewer explained that while she did not specifically ask B.L. if she knew the difference between the truth and a lie due to her young age, she told the child that it was important for her answers to be accurate. B.L.'s mother also testified that on April 3, 2024, she observed redness on B.L.'s buttocks and the child disclosed that the petitioner had digitally penetrated her and made her perform sexual acts upon him.

On July 25, 2024, the adjudicatory hearing continued. The petitioner called Dr. Drew Barzman, whom the court qualified as an expert in the field of forensic psychology, to testify. Dr. Barzman testified that, because B.L.'s forensic interviewer did not use a technique called

---

[1] The petitioner appears by counsel A. Courtenay Craig. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Raymond A. Nolan appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

"narrative event practice," it was "possible that [the interview] could be less reliable." Dr. Barzman further testified that while he had never personally conducted a real forensic interview (as opposed to mock interviews for training purposes), he had reviewed many forensic interviews and testified as an expert witness in multiple jurisdictions. However, Dr. Barzman agreed that B.L.'s forensic interviewer did not ask any questions that were suggestive of an answer. The petitioner testified and denied all allegations of abuse. He opined that his wife fabricated the allegations and coached the child to falsely accuse him of sexual abuse. In the resulting adjudicatory order, the court found that B.L.'s forensic interviewer told the child about the importance of providing accurate answers to the interview questions which demonstrated an appreciation of the requirement that the child be truthful and that B.L.'s forensic interviewer followed all relevant requirements and protocols. The court further found that the interview questions were not suggestive, the child's answers did not indicate coaching, and the child's disclosures were credible and stated in language consistent with a child of her age. Ultimately, the court found, by clear and convincing evidence, that the petitioner sexually abused B.L. in the family home.

In April 2025, the circuit court held a dispositional hearing during which the petitioner testified that he did not abuse B.L. and expressed his intent to appeal his criminal conviction.[3] In the final dispositional order entered June 3, 2025, the court noted the petitioner's adjudication for abusing the children along with his criminal conviction, and found that he could not correct the circumstances of abuse and neglect within a timely manner. The court further found that the children's best interest necessitated termination of the petitioner's parental rights and, accordingly, terminated his parental rights to the children. It is from this order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Specifically, those factual findings

> "shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

*In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 1, in part. Before this Court, the petitioner argues that the circuit court erred by adjudicating him of sexually abusing B.L. To support this argument, the petitioner asserts that the circuit court's findings of fact are unsupported

---

[3] On March 20, 2025, the petitioner was criminally convicted of eleven felonies relating to his sexual abuse of B.L.

[4] A.L.'s mother's parental rights were also terminated. B.L.'s nonabusing mother's parental rights remain intact, and the permanency plan for both children is to remain with her.

by the evidence. In addressing evidentiary challenges, we have explained that the DHS is required "to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (quoting Syl. Pt. 1, *In re S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981)). "We have also stated that the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). For example, the petitioner argues that B.L.'s forensic interviewer never explicitly testified that she followed all interview protocols established by her training program and required by the advocacy center where the interview occurred; thus, the court erred by finding that the interviewer followed all relevant protocols. This argument is meritless, as B.L.'s forensic interviewer testified extensively about her education and training, the interview protocols she used, why she used certain protocols as opposed to others, and B.L.'s interview. The court correctly found that she followed all relevant requirements and protocols during her interview with B.L., a finding consistent with the interviewer's testimony.

In further support of his argument, the petitioner asserts that B.L.'s forensic interview was not conducted according to "nationally required forensic interview techniques." However, the petitioner merely complains that the circuit court rejected Dr. Barzman's opinion that B.L.'s forensic interviewer should have asked more questions about the child's ability to appreciate the truth and employed "narrative event practice." It is important to note that Dr. Barzman testified that it was "possible that [the interview] could be less reliable" due to the interviewer not using the protocols he endorsed. However, the court found Dr. Barzman's critique unavailing and specifically found that the child's disclosures in her interview were credible. Next, the petitioner asserts that because B.L.'s physical examination yielded no results of sexual assault, his adjudication was erroneous. However, an individual may be adjudicated of sexually abusing a child "notwithstanding the fact that . . . the child may have suffered no apparent physical, mental, or emotional injury as a result of that conduct." W. Va. Code § 49-1-201. Further, the petitioner avers that the child's statements in her forensic interview were ambiguous and inconsistent, rendering it impossible to review the record and "find a firm belief [that] anything said in the forensic interview . . . is credible or reliable." However, this Court does not "reweigh the evidence or make credibility determinations." *In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025). Below, the circuit court considered not only the child's interview but also the testimony of several witnesses, including testimony from B.L.'s forensic interviewer and Dr. Barzman as discussed above, and explained its findings in the adjudicatory order. It is clear that the petitioner's true objective is for this Court to reweigh the evidence below and permit him to relitigate adjudication, as he is dissatisfied with the circuit court's weighing of the evidence and credibility determinations. We decline to do so, as we will not substitute our own judgement in place of the circuit court's. *See id.* As such, the petitioner is entitled to no relief.

The petitioner also asserts that the circuit court erred by relying solely upon his conviction and incarceration at disposition. *See In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 3 (requiring consideration of certain factors "[w]hen no factors and circumstances other than incarceration are raised at a disposition hearing . . . with regard to a parent's ability to remedy the

condition of abuse and neglect in the near future"). However, this is not applicable to the matter at hand because the court's dispositional order was not based solely on the petitioner's conviction and incarceration. According to West Virginia Code § 49-4-604(d)(5), there is no reasonable likelihood conditions of abuse can be corrected when

> [t]he abusing parent . . . ha[s] sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child.

Here, the record clearly established that the petitioner sexually abused B.L. and that the degree of family stress and potential for further abuse was so great that it precluded the use of assistive resources. Therefore, we conclude that the court did not err in finding that the petitioner was unable to substantially correct the circumstances of abuse in the near future and that the children's best interests necessitated termination of his parental rights. *See* W. Va. Code § 49-4-604(c)(6) (permitting a circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare). As such, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 3, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: June 1, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III